UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC TAYLOR and
ANJANETTE TAYLOR,

      Plaintiffs,

                                     Case No. 05-71728

v.

                                     Honorable Patrick J. Duggan

TROOPER LISS, TROOPER SATTLER,
TROOPER BOYLE, OFFICER
RAYMOND FAES, SERGEANT
CRAWFORD, OFFICER TAYLOR,
OFFICER BRIAN HAWK, and SPECIAL
AGENT DEBRA LYNCH,

      Defendants.

_____/

**OPINION**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan on July 5, 2006.

PRESENT:       THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

On March 14, 2005, Plaintiffs Eric Taylor and Anjanette Taylor filed suit against

Defendants in the Wayne County Circuit Court. Count I of their Complaint alleges that

Defendants "deprived plaintiffs of their clearly established constitutional rights to be free

from unreasonable searches and seizures and to due process of law by arresting plaintiffs

and seizing their property without a warrant or probable cause, unreasonably searching

plaintiffs, and subjecting plaintiffs to excessive and unnecessary physical force." In

Count II, Plaintiffs assert state law intentional tort claims against Defendants.  On May 2,

2005, Defendants removed the action to this Court on the basis of federal jurisdiction.

Presently before the Court are: (1) Defendants Boyle and Faes's Motion for Summary

Judgment; (2) Defendants Liss and Sattler's Motion for Summary Judgment; and (3)

Defendant Crawford's Motion for Summary Judgment.[1]  The Court heard oral arguments

on these motions on May 16, 2006.

## I.    Background

On April 17, 2003, a confidential source informed Officer Raymond Faes, a Task

Force Agent of the Drug Enforcement Administration's (DEA) Detroit Division, that Eric

Taylor drove to Georgia once a year and transported 20 kilograms of cocaine back to

Detroit.  (Boyle and Faes Mot. for Summ. J., Ex. 1, Report at 1).  The source told Officer

Faes that Eric Taylor was driving to Atlanta to pick up cocaine on April 18, 2003, in a

gold Cadillac Escalade, registered to his wife, Anjanette Taylor.  (Boyle and Faes Mot.

for Summ. J., Ex. 2, Search Warrant at 1).  The source also told Officer Faes that Eric

Taylor had a prior criminal history for trafficking narcotics.  (Search Warrant at 1).

Officer Faes verified Eric Taylor's criminal history through an independent criminal

history check.  (Search Warrant at 1).  In addition, Officer Faes verified that Anjanette

Taylor owned a gold Cadillac Escalade.  (Search Warrant at 2).

---

[1] On February 10, 2006, Plaintiffs filed their First Amended Complaint adding Special Agent Debra Lynch.  Special Agent Lynch was served on March 6, 2006.  On May 1, 2006, she filed an answer.  She has not yet filed a motion for summary judgment.  In addition, by stipulation of the parties, on April 12, 2006, Officer Brian Hawk was dismissed from these proceedings with prejudice.  At the hearing, Plaintiffs conceded that Officer Taylor should be dismissed.  Therefore, this Opinion will only discuss Plaintiffs' claims against Officer Boyle, Officer Faes, Trooper Liss, Trooper Sattler, and Sergeant Crawford.

On April 22, 2003, the source called Officer Faes and informed him that Eric Taylor was returning to Detroit from Atlanta in the Cadillac with 20 kilograms of cocaine. (Boyle and Faes Mot. for Summ. J., Ex. 3, Report at 1).  Plaintiffs Eric and Anjanette Taylor contend that they were returning from a vacation in Atlanta.

Officer Faes and other task force members, including Officer Bradley Boyle, set up surveillance along I-75, south of Detroit.  (*See* Ex. 3, Report at 1).  After spotting Plaintiffs on I-75, Officer Boyle asked Michigan State troopers to stop the Cadillac.  (Ex. 3, Report at 1).  Michigan State Trooper Liss pulled Plaintiffs over.  (Liss and Sattler Mot. for Summ. J., Ex. 1, Liss Aff. ¶3).  They contend that Eric Taylor, the driver, was speeding.  (Liss Aff. ¶3).  However, Eric Taylor asserts that he was not speeding.  (Pls.' Resp. Ex. 1, E. Taylor Dep. at 16).  Trooper Liss obtained Eric Taylor's driving information and told him that he had been stopped for speeding and that there was a "BOL," or "be on the lookout," on the vehicle.  (E. Taylor Dep. at 16-17).

Michigan State Trooper Sattler arrived on the scene.  (E. Taylor Dep. at 17). Troopers Liss and Sattler asked and received permission from Plaintiffs to search the vehicle.  (Liss Aff. ¶3; E. Taylor Dep. at 156; A. Taylor Dep. at 13-14).  After Troopers Liss and Sattler searched the vehicle without finding any drugs, Trooper Liss radioed a request for a K-9 unit, or drug detection dog, from the Lincoln Park Police Department. (Liss Aff. ¶3).

Officer Brian Hawk and K-9 Laser arrived on the scene.  Laser "indicated" the presence of narcotic odors at the back passenger's compartment floorboard and gas tank area.  (Hawk Aff. ¶8).  The Cadillac was towed to the River Rouge Police Department.

At all times during the stop, Officer Faes remained in his vehicle observing what was occurring.  Other DEA agents, including Officer Boyle, arrived on the scene.  Officer Boyle told Eric Taylor he was under arrest.  Eric Taylor contends that Trooper Sattler handcuffed him.  According to Eric Taylor, he asked to be cuffed in the front, but Officer Boyle told Trooper Sattler to cuff him with his hands behind his back.  (E. Taylor Dep. at 23-26, 159-61).  Trooper Sattler transported Eric Taylor to the River Rouge station.  Trooper Liss cuffed and transported Anjanette Taylor.  (A. Taylor Dep. 19-20).  Officers Boyle and Faes followed Plaintiffs to the station.

Sergeant Terry Crawford was working at the front desk at the River Rouge station.  Officer Faes told Sergeant Crawford and Trooper Sattler to bring Eric Taylor into a small room with no toilet or water.  (E. Taylor Dep. at 51-52).  According to Eric Taylor, Trooper Sattler was going to take the handcuffs off Plaintiff, but Officer Faes told him not to do so.  (E. Taylor Dep. at 31, 161).  Eric Taylor contends that he was then left cuffed in the room for six to seven hours.  (E. Taylor Dep. at 32).

Anjanette Taylor was placed in another room.  (A. Taylor Dep. at 22).  According to Anjanette Taylor, when she asked to use the bathroom, she was accompanied by Special Agent Debra Lynch who strip searched her.  (A. Taylor Dep. at 24).

Officer Faes contends that he contacted 26th District Court Judge Charron and asked if he could come to his home with a search warrant request for Plaintiffs' Cadillac.  Officer Faes swore to the facts set forth in the search warrant and Judge Charon executed

4

the warrant. (*See* Pls.' Br. in Opp. to Defs.' Mots., Ex. 6).[2]

A River Rouge K-9 was brought in to search the vehicle and this dog alerted on the car in the exact same place that the Lincoln Park K-9 had alerted earlier. (Boyle and Faes Mot. for Summ. J., Ex. 3, Report at 2). Officer Faes then contacted U.S. Customs and received permission to bring the car there to be x-rayed. U.S. Customs agents x-rayed the Cadillac but did not find any drugs. Although Defendants contend that the vehicle was only x-rayed, both Plaintiffs contend that while they were at the station, they could hear the Cadillac being taken apart. (*See* E. Taylor Dep. at 34-35; A. Taylor Dep. at 27-28).

Both Plaintiffs and the Cadillac were released. Officer Faes testified that from the time of the stop until the Taylors were released, only two and one half to three hours passed. (Boyle and Faes Mot. for Summ. J., Ex. 7, Faes Dep. at 19). However, according to Plaintiffs, six or seven hours passed.

Following the arrest, the Taylors had the Cadillac towed to a repair shop where they incurred $4,884 in repairs for parts that were broken or misplaced. (E. Taylor Dep. at 130-31). Eric Taylor sought medical treatment for back spasms from having his hands cuffed behind his back for six to seven hours. (E. Taylor Dep. 92, 146). Anjanette Taylor contends that she suffers from post-traumatic stress disorder, panic attacks, and has trouble sleeping as a result of the incident. (A. Taylor Dep. 32-35).

## II.   Standard of Review

---

[2] Eric Taylor contends that he heard Officer Faes obtaining the search warrant over the phone. However, Faes testified that he appeared before Judge Charron in person and there is a copy of the signed search warrant in the record. (Boyle and Faes Mot. for Summ. J., Ex. 8, Search Warrant).

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial.  FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment.  *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## III.  Applicable Law and Analysis

First, the State Defendants argue that Plaintiffs have failed to allege a cause of

action under 42 U.S.C. § 1983, the statutory vehicle by which Plaintiffs must assert claims of constitutional violations against municipal employees. Second, all Defendants argue that they are entitled to qualified immunity as to Count I of Plaintiffs' Complaint, the constitutional claims. Finally, in his Motion for Summary Judgment, Sergeant Crawford argues that he is entitled to governmental immunity as to Count II of Plaintiffs' Complaint, the state law tort claims.[3][4]

### A. Constitutional Claims

First, it is well settled that direct constitutional claims may not be pursued against a state employee where the plaintiff has a remedy under 42 U.S.C. § 1983. *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987); *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992); *see also Henderson v. Corrections Corp. of Am.*, 918 F. Supp. 204, 208 (E.D. Tenn. 1996) (granting the plaintiff's motion for summary judgment where the plaintiff alleged direct constitutional violations rather than violations of § 1983).

In this case, Plaintiffs failed to allege constitutional violations arising under 42 U.S.C. § 1983 against the following State Defendants: Sergeant Crawford, Trooper

---

[3] In their Motion for Summary Judgment, Officers Liss and Sattler do not make any specific arguments in support of summary dismissal of Plaintiffs' Count II state law claims. However, the Court believes that the arguments Defendant Crawford has raised also apply to Defendants Liss and Sattler.

[4] By stipulation of the parties, on September 23, 2005, the Court dismissed all § 1983, due process, and tort claims against Officers Boyle and Faes. Thus, the only remaining claims against Officers Boyle and Faes are that they violated Plaintiffs' constitutional right to be free from unreasonable searches and seizures by arresting Plaintiffs and seizing their property without a warrant or probable cause, and by searching Plaintiffs using excessive and unnecessary physical force. (Compl. ¶26).

Sattler, and Trooper Liss.  (Compl. Count II).[5]  In their Complaint, Plaintiffs merely allege:

> Defendants, acting under color of state and federal law, deprived plaintiffs of their clearly established constitutional rights to be free from unreasonable searches and seizures and to due process of law by arresting plaintiffs and seizing their property without a warrant or probable cause, unreasonably searching plaintiffs, and subjecting plaintiffs to excessive and unnecessary physical force.

(First Am. Compl. ¶29).

It is clear that Plaintiffs did not intend to claim a violation of § 1983 as to any Defendant.  The Complaint fails to specifically assert any claim under § 1983. Furthermore, in response to the Federal Defendants' motion to dismiss claims which the federal government believed might be being brought under § 1983, Plaintiffs stated: "The complaint . . . does not contain any allegations of federal jurisdiction and does not mention 42 U.S.C. § 1983."  (Pls.' Resp. to Mot. to Dismiss at 4, filed on 9/2/05). Finally, although in his Motion for Summary Judgment, Defendant Crawford specifically argued that the Plaintiffs' failure to assert a § 1983 claim in their Complaint was a basis for dismissal, Plaintiffs did not respond to this argument in their brief in opposition to Defendants' Motions for Summary Judgment or at the hearing held on May 16, 2006. Therefore, because Plaintiffs do not have an independent cause of action arising under the constitution, Count I must be dismissed as to the State Defendants: Sergeant Crawford, Trooper Sattler, and Trooper Liss.

---

[5] Because § 1983 does not provide a remedy for constitutional violations committed by federal officers acting under federal laws, Plaintiffs may bring claims alleging direct constitutional violations against the Federal Defendants, Officers Faes and Boyle.

In addition, Defendants argue that they are entitled to qualified immunity on Plaintiffs' constitutional claims because they are government officials.  The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  To determine whether a defendant is entitled to qualified immunity, the Sixth Circuit has adopted a three part analysis: (1) whether a constitutional violation occurred, (2) whether the right violated was a clearly established right of which a reasonable person would have known, and (3) whether the facts, supported by the evidence, indicate that the official was objectively unreasonable in light of the clearly established constitutional rights.  *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

    1.  Legality of the Search and Seizure

Plaintiffs assert that Troopers Liss and Sattler,[6] at the direction of Officers Faes and Boyle, violated Plaintiffs' Fourth Amendment rights by detaining them despite the fact that no drugs were found in the Cadillac.

Regardless of whether or not Eric Taylor was speeding,[7] police officers are allowed

---

[6] Although the Court already determined that Count I must be dismissed as to the State Defendants, the Court will address Defendants' qualified immunity arguments as an alternative ground of dismissal.

[7] In this case, Troopers Liss and Sattler contend that they pulled Plaintiffs over because Eric Taylor was speeding.  Police officers are allowed to stop vehicles for traffic violations. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 2003).  However, Eric Taylor denies

to make an investigative stop where they have a reasonable suspicion that a crime is being committed. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1968); *see also Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003) (holding that an officer may make a brief investigatory stop of a vehicle if the officer has a reasonable suspicion that the person has committed a crime). "[A]n informant's tip is sufficient to establish reasonable suspicion; [such suspicion] need not be based on an officer's personal observations." *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986). Moreover, in *United States v. Hensely*, 469 U.S. 221, 105 S. Ct. 675 (1985), the Supreme Court held that police officers may rely on bulletins or flyers issued by other departments as a basis to make *Terry* stops to investigate past crimes. *Id.* at 232, 105 S. Ct. at 682.

In this case, an informant told Officer Faes that Plaintiffs would be transporting drugs in their Cadillac. Trooper Liss stopped Plaintiffs after the DEA advised him that Plaintiffs were supposed to be transporting drugs. Therefore, the Court does not believe that the initial stop of the vehicle was unconstitutional.

Plaintiffs argue that even if the initial stop was not unlawful, the traffic stop became constitutionally impermissible because the seizure was longer than reasonably necessary, citing *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005). In *Davis*, the Sixth Circuit held that the police had reasonable suspicion to detain the plaintiff for thirty to forty-five minutes to wait for the first drug-detection dog to arrive. *Id.* at 354. However, detaining the plaintiff's vehicle for an additional hour after the first dog sniff was negative, to

_____

speeding and no traffic citation was ever issued.

permit a second dog to sniff for drugs, was unreasonable.  *Id.* at 356.

Here, Plaintiffs estimate that they waited between thirty and sixty minutes for the K-9 unit to arrive.  (E. Taylor Dep. at 21; A. Taylor Dep. at 14-15).  However, a review of the record reveals that the Plaintiffs' wait was probably closer to thirty minutes, if not shorter.

According to Officer Faes, Plaintiffs were stopped between 4:00 and 4:30 p.m. Assuming Plaintiffs were stopped at 4:00 p.m., according to Eric Taylor's estimation that fifteen to twenty minutes passed, it was roughly 4:15-4:20 p.m when Trooper Sattler arrived on the scene.  (*See* E. Taylor Dep. at 17).  After Plaintiffs consented to a search of their vehicle, Plaintiffs contend that Troopers Liss and Sattler searched their vehicle and luggage, before radioing for the K-9 unit.  (E. Taylor Dep. at 19).  There is no indication in the record of how long the luggage search took.  As set forth above, Plaintiffs contend that they waited for thirty to sixty minutes for the dog to arrive.  Moreover, Plaintiffs contend that once the K-9 unit arrived, the dog ran around the car for ten to fifteen minutes.  (E. Taylor Dep. at 21).  Plaintiffs estimate that they waited approximately another hour while Defendants towed their car the River Rouge station and arrested them. (*See* E. Taylor Dep. at 22-23).

However, the police blotter at the River Rouge station showed that Plaintiffs arrived at the station at 5:00 p.m.  (Boyle and Faes Reply Br. Ex 6).  In addition, following the K-9 search, Officer Hawk returned to the Lincoln Park Station, and typed and filed his report with the time of 5:39 p.m.  (Pls.' Resp. Ex. 5).  Consequently, there is no support in the record that Plaintiffs were detained for an unreasonably long period of time while

waiting for the K-9 unit to arrive.

Moreover, unlike the detention in *Davis*, in this case, the K-9 indicated that there *were* drugs in the vehicle.  Therefore, the detention following the dog sniff was reasonable.  "An 'alert' by a dog is sufficient to constitute probable cause for an arrest or search."  *United States v. Taylor*, 955 F. Supp. 763, 769 (E.D. Mich. 1997).  Thus, Troopers Liss and Sattler were able to detain Plaintiffs after the initial *Terry* stop because they had probable cause to believe that there were drugs present in the vehicle.  *See United States v. Avery*, 137 F.3d 343, 349 (6th Cir. 1997).   Therefore, viewing the facts in the light most favorable to Plaintiffs, the Court does not believe that a reasonable juror could find that Defendants Liss, Sattler, Faes, and Boyle violated Plaintiffs' constitutional rights during the search and seizure.

2.  Excessive Force

Eric Taylor has asserted a claim for excessive force in violation of the Fourth Amendment against Trooper Sattler, Trooper Liss, Officer Boyle, Officer Faes, and Sergeant Crawford premised upon the manner and length of time he was handcuffed and the small room where he was confined without a bathroom.  The Sixth Circuit has recognized excessive force claims where the handcuffs were unduly tight during the course of an arrest.  *See Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005) ("Not all allegations of tight handcuffing, however, amount to excessive force.  In order to reach a jury on this claim, the plaintiff must allege some physical injury from the handcuffing . . . and must show that the officers ignored plaintiff's complaints that the handcuffs were too tight . . . ."); *Kostrzewa v. City of Troy*, 247 F.3d 633, 640-41 (6th Cir. 2001); *Martin*

12

*v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997); *see also Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993) (finding that a genuine issue of fact remained as to whether defendant used excessive force because there was a dispute as to whether or not plaintiff had told him that she had an injured shoulder).

In this case, Eric Taylor contends that Officer Boyle told Trooper Sattler to place handcuffs on him when he was transporting Plaintiff to the station and to cuff him behind his back, despite his request to be handcuffed in front.  (E. Taylor Dep. 23-26, 159-61). Trooper Liss claims that it was he, not Sattler, who handcuffed and transported Eric Taylor.  (Liss Aff. ¶3).

In their response, Plaintiffs contend that "Mr. Taylor requested that he be handcuffed in front because his arms do not go all the way behind him, a remnant of a back injury suffered in a previous car accident."  (Pls.' Resp. at 14). However, there is no indication in the record that Eric Taylor informed Defendants Boyle, Sattler or Liss that his hands could not be cuffed behind his back due to a medical condition or injury.  *See Walton*, 995 F.2d at 1342.  Rather, according to Plaintiff, at the time he was arrested he merely requested to be cuffed in front.  (E. Taylor Dep. at 26, 159-61).  Therefore, the Court does not believe that, viewing the facts in the light most favorable to Plaintiffs, a reasonable juror could find that Defendants Boyle, Sattler, or Liss used excessive force by handcuffing Eric Taylor behind his back to transport him to the River Rouge station.

Once at the River Rouge station, Eric Taylor testified that Officer Faes told Trooper Sattler not to remove his handcuffs.  (E. Taylor Dep. at 28, 31, 161).  However, there is nothing in Eric Taylor's testimony to suggest that, once at the station, he complained

about the handcuffs being too tight.  Although he testified, "I asked for the cuffs to be removed because it was very uncomfortable, you know.  I mean I couldn't even turn – the place they put me in was about this big, you know," he did not relay this discomfort to any of the officers.  (E. Taylor Dep. at 49).  In fact, Eric Taylor testified, "I just said could you remove the cuffs.  I didn't ask nobody in particular."  (E. Taylor Dep. At 50-51).  In summary, there is nothing in the record to indicate that Eric Taylor ever told the officers why he wanted the handcuffs removed or about his existing back injury.

The Court must also address the alleged conditions of Plaintiff's detention at the River Rouge station.  At the hearing, counsel for Plaintiffs acknowledged that Eric Taylor's excessive force claim against Officer Faes is based on Eric Taylor's allegations that Faes left him handcuffed in a small cell without a bathroom for six to seven hours.

Whether force is excessive is judged under the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989).  Proper application of the reasonableness test requires careful attention to "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S. Ct. at 1872 (citation omitted).

In addition, "'claims of excessive force do not necessarily require allegations of assault,' but rather can consist of the physical structure and conditions of the place of detention." *Burchett v. Keifer*, 310 F.3d 937, 946 (citing *Cornwell v. Dahlberg*, 963 F.2d 912, 915 (6th Cir. 1992)).  The Fourth Amendment permits detention using only "the least

14

intrusive means reasonably available." *United States v. Sanders*, 719 F.2d 882, 887 (6th Cir. 1983).

In this case, there is no testimony that Eric Taylor resisted arrest at any time, or that he posed a danger to himself or others once at the station, detained in the cell. Although Officer Faes denies that he had any contact with Plaintiffs until they were released (Faes Dep. at 18-19), Eric Taylor alleges that Officer Faes directed Sergeant Crawford to keep Plaintiff in a small room without a toilet or water for six to seven hours and told Trooper Sattler to keep the handcuffs on Taylor. (E. Taylor Dep. at 31, 51-52, 161). According to Eric Taylor:

> Q. So what happened then?
>
> A. I stayed in [the small room] for numerous hours, sir, and I told him I had to, you know, urinate, because I'm just driving from out of town because we was planning on stopping at a rest stop. I wound up urinating on myself.
>
> * * *
>
> Q. Now you indicated you had to use the bathroom?
>
> A. And I wound up urinating on myself. They wouldn't open up the door.
>
> Q. Did you yell out for someone or something?
>
> A. When I yelled out, they came and slid the thing back and they just shut the thing.
>
> Q. All right, let's back up. They came, who came?
>
> A. Well, not they. I couldn't really see them because it was just a little peck little thing, you know. And I tried to yell could I use the restroom . . . .

(E. Taylor Dep. at 31, 33). Moreover, according to Anjanette Taylor, while at the station, she heard her husband ask to use the restroom at least twice. (A. Taylor Dep. at 103-04).

15

The Supreme Court has noted that the "deprivation of bathroom breaks" can violate the Eighth Amendment's prohibition on "unnecessary and wanton infliction of pain." *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S. Ct. 2508, 2514 (2002); *see also Knop v. Johnson*, 655 F. Supp. 871, 878 (W.D. Mich. 1987) (denying defendant's motion for involuntary dismissal where plaintiffs presented evidence that prisoners' Eighth Amendment rights were violated because their requests to be released from cell to use the bathroom were ignored). "Such actions *a fortiori* violate the Fourth Amendment, which requires a showing of objective unreasonableness rather than any particular subjective motivation." *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 398-99, 109 S.Ct. 1865, 1873 (1989)).

For example, in *Carroll v. Village of Homewood*, 2001 WL 1467708 (N.D. Ill. Nov. 15, 2001), the plaintiff brought a claim for excessive force in violation of the Fourth Amendment against police officers who allegedly refused to allow plaintiff to use a bathroom. *Id.* at *10. The defendants moved for summary judgment asserting qualified immunity. *Id.* The court denied defendants' motion for summary judgment, finding that ignoring plaintiff's request to use the restroom can violate the Fourth Amendment's prohibition on excessive force. *Id.* at *11. The court reasoned:

> Although the total amount of time that Carroll was deprived of bathroom use was only one hour, Carroll claims that he clearly needed to use the bathroom from the moment he stepped out of his car. Defendants argue that Carroll did not ask to use the restroom until he was arrested. In addition, Harris testified that at the station, Carroll did not request to use the restroom until the observation period began. Carroll denies both of these claims, testifying that he repeatedly asked to use the restroom before and during the sobriety tests, in the car with Harris, and

at the station before the observation period began.  In addition, Carroll's wife testified that she heard Carroll request to use the restroom before he was arrested.  Finally, Judge Condon found that it was obvious that Carroll had to use the restroom from the moment he exited his car.  This creates, at the very least, a factual dispute about whether defendants knew that Carroll needed to use the restroom before his arrest and before the observation period.  A reasonable jury could decide that defendants' refusal to allow Carroll to use the restroom, with the knowledge that he desperately needed to urinate, was unreasonable.

*Id.*

In this case, Plaintiff contends that he was left handcuffed in the cell for *six to seven hours* and that his requests to use the bathroom were ignored.  Although Plaintiff contends that Officer Boyle, jointly with Officer Faes, took charge and made all of the decisions at the River Rouge station (E. Taylor Dep. at 30), Plaintiff admits that he had no contact with Boyle while he was detained at River Rouge.  (*See* E. Taylor Dep. at 133).  In fact, according to Plaintiff, his only contact with Boyle occurred during the arrest on I-75.  (*Id.*).

However, according to Eric Taylor, Officer Faes was aware that Eric Taylor had been left in the small cell, handcuffed, for six to seven hours because it was Faes who gave the instructions to Sattler and Crawford.  (*See* E. Taylor Dep. at 31-32, 161).  Consequently, the Court believes that genuine issues of material fact exist as to whether the conditions under which Eric Taylor were detained at the River Rouge station amounted to excessive force in violation of the Fourth Amendment by Officer Faes.[8]

---

[8] Sergeant Crawford was working the front desk at the River Rouge station (E. Taylor Dep. at 29-30) and, as desk supervisor, was responsible for what went on at the station.  Moreover, Plaintiff testified that Sergeant Crawford accompanied him to the small cell with no toilet (E. Taylor Dep. at 31, 51-52) and was on duty the entire time Plaintiff remained in the cell (E. Taylor Dep. at 50).  Thus, if Plaintiff had brought a § 1983 claim against Crawford, arguably a question of fact might exist with respect to his liability for excessive force for the same reasons

17

Returning to Defendants' argument that the doctrine of qualified immunity should apply, the Court believes that, viewing the facts "in the light most favorable to the party asserting the injury," the facts as alleged, i.e., that Officer Faes placed Eric Taylor in a small cell in handcuffs, without a toilet, after having been informed of his need to urinate, amount to "excessive force" in violation of the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). Next, the Court must consider whether the right to be free of this "excessive force," as alleged by Plaintiff Eric Taylor, was "clearly established." *Id.* at 202, 121 S. Ct. at 2156. A constitutional right is clearly established if in light of pre-existing law the unlawfulness of the conduct would be apparent to a reasonable official. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). An official action is not protected by qualified immunity simply because previous law has not held the questioned action to be unlawful. *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12, 105 S. Ct. 2806, 2820 n.12 (1985). Rather, the crucial inquiry for a reviewing court is whether a reasonable official, reviewing the pre-existing law and applying it to the circumstances surrounding the questioned incident, would have readily concluded that the conduct was unlawful. *Creighton*, 483 U.S. at 640-41, 107 S. Ct. at 3039-40. In determining whether a right is clearly established, "we look first to the decisions of the Supreme Court, then to the decisions of this court and other courts within

---

as the Court found a question of fact exists with respect to Officer Faes. *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) ("[A] police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.").

our circuit, and finally to decisions of other circuits." *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir.2002)

In this case, the Court believes that a reasonable official, reviewing the pre-existing law and applying it the conduct alleged by Eric Taylor, would have concluded that the conduct was unlawful. As set forth above, the Supreme Court has found that depriving prisoners of bathrooms breaks violates the Eighth Amendment's prohibition on "unnecessary and wanton infliction of pain." *Hope*, 536 U.S. at 738, 122 S. Ct. at 2514; *see also Knop*, 655 F. Supp. 871, 878 (W.D. Mich. 1987). Although the Eighth Amendment does not apply in this case because Eric Taylor was not a prisoner, he was entitled to the same level of protection as a convicted prisoner. *See Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (citing *Graham*, 490 U.S. 386, 398-99, 109 S.Ct. 1865, 1873 (1989)). Therefore, viewing the facts in the light most favorable to Plaintiff, Officer Faes is not entitled to qualified immunity.

**B.  State Law Claims**

Sergeant Crawford seeks summary dismissal of Count II of Plaintiffs' Complaint which alleges state tort claims of false arrest and assault and battery. In his Motion for Summary Judgment, Sergeant Crawford contends that, because he is a governmental agent, he is immune from tort liability pursuant to MICH. COMP. LAWS ANN. § 691.1407. Although this immunity does not extend to intentional torts, *see* MICH. COMP. LAWS ANN. § 691.1407(2)(c); *Sudul v. City of Hamtramck*, 221 Mich. App. 455, 458, 562 N.W.2d 478, 479 (2004) ("We especially hold that an individual employee's intentional torts are not shielded by our governmental immunity statute . . . ."), the Court believes that an

19

examination of the record, in the light most favorable to Plaintiffs, supports dismissal of

Plaintiffs' state law claims against Sergeant Crawford, Trooper Sattler, and Trooper Liss.

1.  False Arrest

A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the

person arrested is irrelevant.  *Lewis v. Farmer Jack Div.*, 415 Mich. 212, 218, 218 n.1,

327 N.W.2d 893, 894, 894 n.1 (1982).  To prevail on a claim of false arrest, a plaintiff

must show that the arrest was not legal, i.e., that the arrest was not based on probable

cause.  *Id.* at 218, 327 N.W.2d at 894.  In this case, the Court believes that the arrest was

based on probable cause.  *See United States v. Taylor*, 955 F. Supp. 763, 769 (E.D. Mich.

1997) ( "An 'alert' by a dog is sufficient to constitute probable cause for an arrest or

search.").  Therefore, Plaintiffs' false arrest claim must be dismissed.

2.  Assault and Battery

In his Reply, Sergeant Crawford maintains that there is no evidence in the record to

support Eric Taylor's claim for assault and battery.  Under Michigan law, an assault is

"any intentional unlawful offer of corporal injury to another person by force, or force

unlawfully directed toward the person of another, under circumstances which create a

well-founded apprehension of imminent contact, coupled with the apparent present ability

to accomplish the contact."  *Espinoza v. Thomas*, 189 Mich. App. 110, 119, 472 N.W.2d

16, 21 (1991).  Battery is "the wilful and harmful or offensive touching of another person

which results from an act intended to cause such contact."  *Id.*, 472 N.W.2d at 21.

In this case, there is no genuine issue as to whether Sergeant Crawford committed

an assault and battery. According to Eric Taylor, Sergeant Crawford merely led Eric Taylor to a cell. (E. Taylor Dep. at 48). Sergeant Crawford had no physical contact with Plaintiff Eric Taylor and there is nothing in the record to suggest that Sergeant Crawford ever touched Plaintiff or created an apprehension of imminent contact.

Similarly, there is no genuine issue as to whether Troopers Liss and Sattler committed an assault and battery. The use of reasonable force in the course of a lawful arrest does not constitute assault. *See Delude v. Raasakka*, 391 Mich. 296, 303, 215 N.W.2d 685, 689 (1974). As discussed above, the Court believes that Troopers Liss and Sattler acted reasonably by handcuffing Eric Taylor behind his back to transport him to the River Rouge station.

Consequently, Plaintiff Eric Taylor's assault and battery claim against Sergeant Crawford, Trooper Liss, and Trooper Sattler, must be dismissed.

## IV.  Conclusion

For the reasons set forth above,

(1) The Motions for Summary Judgment filed by Defendants Crawford, Liss, and Sattler will be granted as to Plaintiffs' state law claims of false arrest and assault and battery (Count II).

(2) All federal claims against Defendants Crawford, Liss, and Sattler will be dismissed because:

    (a) Plaintiffs failed to assert the required claims against Defendants Crawford, Liss, and Sattler under 42 U.S.C. § 1983; and

    (b) Plaintiffs have failed to produced evidence to support their claims against

Defendants Liss and Sattler for any violation of Plaintiffs' constitutional rights to

be free from unlawful search and seizure and excessive force.[9]

(3) All claims against Defendant Boyle are dismissed because Plaintiffs have failed

to present any evidence to support their claims against Boyle for any violation of

Plaintiffs' constitutional rights.

(4) All claims against Defendant Faes, except for Plaintiff Eric Taylor's claim of

excessive force based on Eric Taylor's allegations that Faes left him handcuffed in a

small cell without a bathroom for six to seven hours, are dismissed.  The Court

believes that genuine issues of fact remain with respect to Eric Taylor's excessive

force claim against Defendant Faes, and the Court does not find that Defendant Faes

is entitled to the defense of qualified immunity.

An Order consistent with this Opinion shall issue.


                              s/PATRICK J. DUGGAN
                              UNITED STATES DISTRICT JUDGE


Copies to:
Thomas R. Present, Esq.
Bert T. Ross, Esq.
Ethan Vinson, Esq.
Felepe H. Hall, Esq.
George M. DeGrood, III, Esq.
Geneva S. Halliday, Esq.

---

[9] As indicated, if Plaintiffs had asserted a § 1983 claim against Defendant Crawford, a
question of fact might exist as to his liability for excessive force in violation of the Fourth
Amendment.

22